UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINCOLN OSBURN THOMAS,

                Plaintiff,

      -against-

METROPOLITAN CORRECTION
CENTER (MCC),

                Defendant.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 1769 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

         On February 25, 2009, pro se Plaintiff Lincoln Osburn Thomas initiated this action against the Metropolitan Correctional Center ("MCC"), the MCC Medical Unit, and the following members of the Medical Unit staff: Dr. Rolando Newland, Dr. Mark Glover, and Mr. Kahn.  (Docket No. 2)  On June 16, 2009, Plaintiff filed an Amended Complaint.  (Docket No. 6)  Without alleging that his constitutional rights were violated or identifying any specific cause of action, Plaintiff alleges that Defendants failed to provide him with proper medical treatment while he was incarcerated at the MCC and claims that his unit was not well-ventilated, which caused or aggravated his breathing problems.

         On February 16, 2010, Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failing to state a claim under the Eighth Amendment for inadequate medical treatment.  (Docket No. 16)  By order dated February 4, 2010, the Court set a briefing schedule, directing Plaintiff to submit his opposition papers by March 16, 2010.  (Docket No. 15)  Plaintiff failed to submit an opposition.  On

April 1, 2010, the Court issued a second order, extending Plaintiff's time to oppose Defendants' motion until April 30, 2010, and informing Plaintiff that if he failed to respond the Court would consider the motion unopposed. (Docket No. 19) To date, the Court has received no communication from Plaintiff in response to Defendants' motion or to the Court's February 4, 2010 and April 1, 2010 orders. Accordingly, Defendants' motion is considered unopposed. For the foregoing reasons, Defendants' motion to dismiss will be GRANTED.

## DISCUSSION

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff 'bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.'" Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (quoting APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003)). In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts may consider evidence outside pleadings. See Makarova, 201 F.3d at 113; City of New York v. FDIC, 40 F. Supp. 2d 153, 160 (S.D.N.Y. 1999) (citing Kamen v. AT & T Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

A Rule 12(b)(6) motion challenges the legal sufficiency of the specific claims brought. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct." Id. at 1950.  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Because Plaintiff is proceeding pro se, the Court construes the complaint liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), "interpret[ing] it to raise the strongest arguments that it suggests." Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011(RJS), 2008 WL 953616, at *2 (S.D.N.Y. Apr. 3, 2008) (internal quotation omitted).  As in any other case, however, the Court accepts as true only factual allegations, and does not accept as true allegations stating only legal conclusions.  Harris, 572 F.3d at 72 ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." (quoting Iqbal, 129 S.Ct. at 1949)).

I.   FACTS

For purposes of deciding Defendants' motion to dismiss, the Court assumes that the following factual allegations in the Amended Complaint, and in documents that the Amended Complaint incorporates by reference,[1] are true:

---

[1] The Court may consider documents incorporated by reference in the Amended Complaint without converting Defendants' motion to dismiss to a motion for summary

Plaintiff entered the MCC on May 9, 2008. Plaintiff was interviewed by the MCC's medical staff and informed them that he suffers from "sleep apnea, heart problem, and constant headaches." (Am. Cmplt. at 9) Soon thereafter, Plaintiff was seen by Defendants Newland and Glover, and Dr. Glover stated that he was "some what of an expert or ha[d] extensive knowledge" concerning sleep apnea. (Id.) Plaintiff was brought to a hospital three times while he was incarcerated at MCC. The first visit related to chest pain, the second took place in October 2008 and involved a "Sleep Study," and the third visit took place on January 5, 2009 and involved an unexplained sickness. (Id.)

Plaintiff complains that he "became very sick while in the custod[y] of the [MCC]" and "had to be hospitalized for five weeks," and that "the medical staff at the [MCC] dismiss[ed] [his] numerous complain[t]s or didn't take them that serious." (Id. at 3) Plaintiff further alleges that as "a result of my breathing problem [which] became more severe I developed bronchitis and blood clot[] in my leg and spent five weeks in the hospital on antibiotic, albuteral, triaminolone etc." (Id.) He states that he "ma[de] numerous complaints to the Medical Staff and they was very slow to act. [I]t was not until I became extremely weak, ill before my couns[elor] interv[ened] on my behalf that something was done. The situation didn't have to get so serious." (Id. at 5)

Plaintiff further complains that (1) he was never provided with a "breathing machine to help with [his] 'Sleep Apnea'"; (2) that a physician's assistant failed to address his claim that he was unable to "make it down stairs . . . because I was

---

judgment. See Kamholtz v. Yates County, No. 09-0026-cv, 2009 WL 3463481 (2d Cir. Oct. 29, 2009); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

too ill" and that Plaintiff had to ask his counselor to contact the medical unit; (3) on another occasion, physician assistant Khan said to Plaintiff, "what are you doing down here there is nothing that [I] can do for [you]"; and (4) "sometimes [Plaintiff] went to court ill." (Id.)

Plaintiff also alleges that "[f]or about two months beginning June 30, 2008 to August 13, 2008 there was no circulated air in my cell" and that his "unit was very dusty especially on the window which did not help [his] breathing problem." (Id.)

Plaintiff states that he was aware of a grievance procedure at the MCC and that it covered his claims. (Id. at 4) He further states that he filed a grievance directed "to the Medical Staff" that addressed "multipl[e] claim(s) from difficulty breathing, chest pain, dizz[i]ness etc.," and "never received any written respon[ses]," "only the run-a-round." (Id. at 4). Plaintiff filed "an administrative grievance . . . with [his] counselor Ms. Fields and the Jane Doe, who was in charge of the medical unit aside from the doctors." (Id. at 10) Plaintiff alleges that "whenever [he] complained to Ms. Fields my couns[elor] she would then make a phone call in front of me to medical but the[ir] response was they are aware of the problem." (Id. at 5) "Whenever [Plaintiff] complain[ed] or went to sick call they would either take [his] blood pressure or put [him] on the EKG machine and send [him] back to [his] unit." (Id.)

## II.    APPLICABLE LEGAL STANDARDS

The Amended Complaint alleges no specific violations of Plaintiff's constitutional rights. Because the Court interprets the pleadings of pro se litigants liberally, the Amended Complaint is read to assert tort claims related to Plaintiff's medical care under the Federal Tort Claims Act ("FTCA") and claims for money

5

damages under the Eighth Amendment for inadequate medical treatment pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

### A. Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity for common law tort suits against the United States. The FTCA states, in relevant part, that a suit against the United States is the exclusive remedy for a suit for damages for injury "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 2679(b)(1), "and provides government officers and employees acting within the scope of their employment with absolute immunity from claims of state law torts." Hightower v. United States, 205 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2002) (citing Rivera v. United States, 928 F.2d 592, 608-09 (2d Cir. 1991)). The FTCA precludes tort suits against federal agencies and "makes the only proper federal institutional defendant in such an action the United States." Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (citing Rivera, 928 F.2d at 609); C.P. Chem. Co. v. United States, 810 F.2d 34, 37 n.1 (2d Cir. 1987) ("The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself."). The MCC and MCC Medical Unit are federal agencies within the scope of the statute. See 28 U.S.C. § 2671 ("Federal agenc[ies]" under the FTCA include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities of agencies of the United States."); Paulino-Duarte v. United States, No. 02 Civ. 9499 (RCC), 2003 WL 22533401, at *1 (S.D.N.Y. Nov. 7, 2003) (holding that the MCC is a federal agency immune from suit under the FTCA).

The FTCA likewise precludes common law tort suits against federal employees. Whether an employee is "acting within the scope of his office of employment at the time of the incident out of which the claim arose" is determined by certification of the Attorney General. 28 U.S.C. § 2679(d)(2). Upon such certification, the United States "shall be substituted as the party defendant." Id. "An express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment." Cates v. Williams, No. 08 Civ. 1529 (HB), 2009 WL 723021, at *5 (S.D.N.Y. Mar. 19, 2009)(citing B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc., 23 F.3d 709, 715-16 (2d Cir. 1994)). Defendants' brief properly "'serve[s] as a petition to certify that [Dr. Newland, Dr. Glover, and Mr. Kahn] were employees acting within the scope of their employment.'" (Def. Br. at 8) (quoting Cates, 2009 WL 723021, at *5). Accordingly, the United States is substituted as a party defendant in their place and any FTCA claims against the individual defendants, the MCC, and the MCC Medical Unit are dismissed for lack of subject matter jurisdiction.

  **B.** **Constitutional Claims Under Bivens**

"[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called Bivens action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counselling hesitation in the absence of affirmative action by Congress.'" Lombardi v. Whitman, 485 F.3d 73, 78 (2d Cir. 2007) (internal citations omitted) (quoting Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006); Hudson Valley Black Press, 409 F.3d at 108 (quoting Bivens, 403 U.S. at 396)). In other words, a Bivens

7

action allows suit against a federal employee acting under the color of federal law for damages resulting from the violation of an individual's constitutional rights.  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70-71 (2001).

An individual may not, however, bring suit against the United States, its agencies or employees in their official capacity, because the United States has not waived its sovereign immunity for constitutional violations.  It is settled law that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941); see also United States v. Testan, 424 U.S. 392, 399 (1976). "Here, there is no consent by statute or other means permitting a Bivens claim to be brought against the United States, MCC/NY or [a federal employee] in his official capacity. . . . However, a Bivens claim may be brought against a federal officer in his individual capacity."  Paulino-Duarte, 2003 WL 22533401, at *3.

Accordingly, to the extent Plaintiff asserts any constitutional claims against the MCC, the MCC Medical Unit, or the individual defendants in their official capacities the Court does not have subject matter jurisdiction over these claims and they are dismissed.  See Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484 (1994); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994); Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983) (Such constitutional claims against the United States are "routinely dismissed for lack of subject matter jurisdiction.").

### III. PLAINTIFF'S REMAINING CLAIMS AGAINST THE UNITED STATES AND THE INDIVIDUAL DEFENDANTS ARE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that the remaining claims in the Amended Complaint should be dismissed because Thomas failed to exhaust his administrative remedies. Defendants' exhaustion arguments are based both on the subject matter jurisdiction granted to this Court by the FTCA and the affirmative defense of failure to exhaust under the provisions of the Prison Litigation Reform Act ("PLRA").  Because the Court has no subject matter jurisdiction to hear Plaintiff's claims against the MCC, the MCC Medical Unit and the individual defendants in their official capacities, those claims must be dismissed under Rule 12(b)(1).  Because Plaintiff failed to exhaust his administrative remedies as required by the PLRA, he likewise has no viable <u>Bivens</u> claim against the individual defendants in their individual capacities.  Accordingly, those claims must also be dismissed.

#### A. Exhaustion under the Federal Tort Claims Act

Defendants argue that "[o]nce the United States is substituted as the defendant with respect to any FTCA claims, the Court must dismiss those claims pursuant to Rule 12(b)(1) because Plaintiff did not exhaust all administrative remedies prior to instituting the instant lawsuit."  (Def. Br. at 8)  The FTCA states in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant <u>shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail</u>. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

9

28 U.S.C. § 2675(a) (emphasis added).

The FTCA's presentment requirement "must be satisfied to obtain jurisdiction to sue the United States." Romulus v. United States, 983 F. Supp. 336, 338 (E.D.N.Y. 1997), aff'd, 160 F.3d 131 (2d Cir. 1998); McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); Robinson, 21 F.3d at 510 (court had no subject matter jurisdiction where plaintiff "failed to first present his claim to the appropriate agency") Compliance with Section 2675 "is strictly construed." Romulus, 983 F. Supp. at 339 (citation omitted). "The burden is on the plaintiff to both plead and prove compliance with the statutory requirements [of the FTCA]. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim," because the United States has not waived its sovereign immunity other than to the extent explicitly stated by the FTCA. In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987) (citations omitted); see Sherwood, 312 U.S. at 586-87; Mohammad v. Connolly, 2007 WL 1541370, at **3-4 (E.D.N.Y. May 25, 2007) (citing same case law).

Plaintiff alleges only that he filed a "B.P.8.5 with [his] counselor Ms. Fields and the Jane Doe," and that he filed a grievance "with medical sick call sheet" and the "medical staff." (Am. Cmplt. at 10, 4) Plaintiff does not assert that he sought to file follow-up complaints, appeal any actions taken by Defendants related to his initial complaints, or that he had any communication with the Federal Bureau of Prisons, as the FTCA requires. Accordingly, because Plaintiff has failed to "plead and prove compliance with the statutory requirements" of administrative exhaustion, his FTCA claims must be dismissed. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d at 214.

### B.       Prison Litigation Reform Act Exhaustion Requirements

Because Plaintiff has failed to exhaust the available administrative remedies provided by the MCC, the <u>Bivens</u> claim against the individual defendants in their individual capacities must also be dismissed.  <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) ("federal prisoners suing under [<u>Bivens</u>] must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit").

The PLRA requires that "[n]o action [] be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1996).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. at 532.  Under the PLRA, a plaintiff complaining about prison conditions must fully utilize the prison facility's internal grievance procedures before filing suit.  A plaintiff, in other words, must fully comply with the prison facility's grievance rules and procedures and must appeal any issue raised through the highest level of administrative review.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Woodford v. Ngo</u>, 548 U.S. 81, 93-95 (2006); <u>Booth v. Churner</u>, 532 U.S. 731, 739-40 (2001).  These rules apply even where the relief sought in an action – for example, money damages – is unavailable at the administrative stage.  <u>See</u> <u>Grey v. Sparhawk</u>, No. 99 Civ. 9871 (HB), 2000 WL 815916, at *2 n.2 (S.D.N.Y. June 23, 2000).  Where it is clear that an inmate did not exhaust his administrative remedies, the court must dismiss the action.  <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 117-18 (2d Cir. 2001); <u>Harris</u>

v. Bowden, No. 03 Civ. 1617 (LAD), 2006 WL 738110, at *2 (S.D.N.Y. Mar. 23, 2006) ("Statutory exhaustion requirements are mandatory; courts may not dispense with them freely." (citing Bastek v. Federal Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998)).

Compliance with the PLRA's exhaustion requirements is excused, however, where: (1) administrative remedies are not available; (2) defendants have either waived this defense or acted so as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, otherwise justify the prisoner's failure to comply with the exhaustion requirement. Ruggiero v. County of Orange, 467 F.3d 170, 175-76 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

"Where it appears from the face of the complaint that a plaintiff concedes lack of exhaustion [under the PLRA], or non-exhaustion is otherwise apparent, a court may decide the exhaustion issue on a [motion to dismiss]." Verley v. Goord, No. 02 Civ. 1182 (PKC)(DF), 2004 WL 526740, at *27 (S.D.N.Y. Jan. 23, 2004) (citing Rivera v. Pataki, No. 01 Civ. 5179 (MBM), 2003 WL 21511939, at *4 (S.D.N.Y. July 1, 2003); McCoy v. Goord, 255 F. Supp. 2d 233, 250-52 (S.D.N.Y. 2003)). Because failure to exhaust is an affirmative defense, exhaustion need not be pleaded in a complaint. See Jones v. Bock, 549 U.S. 199, 215 (2007). From the pleadings in this action, however, it is evident that Thomas failed to exhaust his administrative remedies.

The "applicable procedural rules" are "defined not by the PLRA, but [by] the [local] prison grievance process itself." Jones v. Bock, 549 U.S. at 218. The Bureau of Prison's Administrative Remedy Program provides for a four-step administrative process. First, inmates "shall [] present an issue of concern informally to staff, and staff

shall attempt to informally resolve the issue." 28 U.S.C. § 542.13(a). If the issue remains unresolved after an informal complaint, an inmate must then raise his complaint to the Warden of the facility where he is incarcerated on an "Administrative Remedy Request" form, or a "BP-9." Id. § 542.14(a). The form must be filed within twenty days "following the date on which the basis for the Request occurred." Id. Appeals of the Warden's action on the BP-9 complaint may first be made to the Regional Director of the region in which the complaining inmate is housed, id. § 542.14(d)(2), and then, finally, to the General Counsel of Central Office of the Federal Bureau of Prisons within thirty days of the Regional Counsel's decision. Id. §542.15(a).

"[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). But without procedural compliance, "notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.'" Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (quoting Woodford, 548 U.S. at 95).

Here, Plaintiff failed to file any grievance beyond the initial informal complaint. Plaintiff's amended complaint makes no mention of filing complaints with the Warden of the MCC or with the Federal Bureau of Prisons, nor does he offer any opposition to Defendants' arguments for dismissal.

While Plaintiff received no response to his initial, informal complaints, this does not excuse his obligation to exhaust the remaining administrative remedies provided in the Administrative Remedy Program. Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("plaintiff's allegation that [] particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"). Moreover, nothing in the Amended Complaint suggests that any of the exceptions to the exhaustion requirement apply here. Administrative remedies were available, and Plaintiff does not assert that his ability to pursue administrative remedies was impaired in any way. Indeed, Board of Prison records show that Plaintiff did not file a single Administrative Remedy Request while in BOP custody. (Mason Decl. ¶ 13)

Finally, Plaintiff's failure to file complaints in any form about actions taken by the individual defendants provides an independent basis for dismissal of his Bivens claims against them. Collins v. Goord, 438 F. Supp. 2d 399, 413 (S.D.N.Y. 2006) (dismissing claims against individual defendants because "grievance does not name or even allude generally to defendants"); Sanchez v. Fischer, No. 03 Civ. 4433 (GBD), 2005 WL 1021178, at *4 (S.D.N.Y. May 2, 2005) (dismissing claims against individual defendant because plaintiff's grievance made no allegations against him).

Because the pleadings here demonstrate that Plaintiff has failed to exhaust his administrative remedies, dismissal for failure to exhaust under both the FTCA and the PLRA is appropriate.[2]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. (Docket No. 16) The Clerk of the Court is directed to terminate the motion and close this case.

Dated: New York, New York  
       June 21, 2010

SO ORDERED.

*Paul Gardephe*  
Paul G. Gardephe  
United States District Judge

---

[2] Because this action is dismissed in its entirety for lack of subject matter jurisdiction, the Court does not reach Defendants' arguments for dismissal under Rule 12(b)(6).